# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

| | |
|---|---|
| EDWARD RAGELIS, JR. <br> PLAINTIFF | |
| V. | CASE NO. 4:19CV00166 SWW |
| THEODORE HAASE, individually and in his official capacity; CHARLES "DOC" HOLLADAY, individually and in his official capacity; PULASKI COUNTY SHERIFF'S OFFICE; and ERIC HIGGINS, in his official capacity, <br> DEFENDANTS | |

## **OPINION AND ORDER**

Plaintiff Edward Ragelis, Jr. ("Ragelis") brings this action under 42 U.S.C. § 1983, claiming that Defendants Theodore Hasse ("Hasse"), a Pulaski County Sheriff's Office ("PCSO") officer, and Charles "Doc" Holladay ("Holladay"), a former Pulaski County Sheriff, caused him to be wrongfully arrested and subjected to excessive force in violation of the United States Constitution. Ragelis sues Hasse and Holladay in their individual and official capacities, and his official

capacity claims are claims against Pulaski County.[1] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Ragelis also brings a supplemental state law claim against Hasse. Before the Court is Defendants' motion for summary judgment [ECF Nos. 17, 18, 19], Ragelis's response in opposition [ECF No. 22], and Defendants' reply [ECF No. 25]. After careful consideration, and for reasons that follow, Defendants' motion is granted.

## I. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

---

[1]Ragelis names defendant Eric Higgins, the current Pulaski County Sheriff, but he sues Higgins in his official capacity only. Ragelis also names the Pulaski County Sheriff's Office as a defendant, but a sheriff's office is not a person or entity subject to suit under 42 U.S.C. § 1983. *See Ketchum v. City of West Memphis*, 974 F.2d 81 (8th Cir. 1992) (holding that the West Memphis Police Department and Paramedic Services are departments or subdivisions of the city government and not separate jurisdictional entities).

The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with 'specific facts showing a genuine issue for trial. *Id*. at 587. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).

## II. Background

On May 10, 2017, at approximately 5:30 p.m., Ragelis, Charlotte Davis ("Davis"), and Dustin Thomas ("Thomas") were inside Ragelis's residence in Sherwood, Arkansas. Davis lived at the residence with Ragelis, and one of her two sons had recently died. Thomas, Davis's remaining son, had been staying at the residence for a few days following his brother's death. According to Ragelis's affidavit and deposition testimony, Thomas had been drinking and began cursing at his mother, and he refused Ragelis's orders to leave his property. Ragelis further testifies that when he intervened and attempted to defuse the situation, Thomas approached him in anger and invaded his personal space. At some point, Ragelis called 911 and reported that Thomas had a firearm.

Hasse was the first PCSO officer to arrive at the scene. When he arrived, Ragelis was standing outside, near his garage, and Thomas and Davis were in the

3

driveway, near a vehicle. Hasse determined that there was no firearm at the scene, and he and PCSO deputies Johnathan Parker ("Parker") and Dennis Atkins, who arrived at the scene after Hasse, interviewed Ragelis, Davis, and Thomas. Each witness told the officers, among other things, that Ragelis had twice grabbed Thomas by his shirt collar and pinned him to the ground. The officers also observed that Thomas had red scratch marks on his neck, and Ragelis had a scrape on his elbow. Parker arrested Ragelis on charges of domestic battery in the third degree and placed him in handcuffs, and Ragelis was transported to the Pulaski County Regional Detention Facility. The charges against Ragelis were eventually nolle prossed. Subsequently, Ragelis filed a complaint with the PCSO against Hasse, charging wrongful arrest. Following an internal investigation, the PSCO determined that Hasse's actions were proper.

## III. Discussion

For his individual-capacity claims against Hasse, Ragelis charges that Hasse, not Parker, made the decision to arrest him without probable cause, in violation of the Fourth Amendment. Ragelis further charges that Hasse directed Parker to handcuff him behind his back, despite Ragelis's request to be handcuffed in front. According to Ragelis, the handcuffs were painful and too tight, which amounted to excessive force, in violation of the Fourth Amendment. For his individual-capacity

4

claims against Holladay, Ragelis claims that the former sheriff failed to properly train and supervise Hasse, which caused him to suffer a deprivation of constitutional rights. Finally, for his official-capacity claims, Ragelis charges that the County's policies and customs were the moving force behind his Fourth Amendment deprivations.[2]

In support of their motion for summary judgment, Defendants argue that (1) Hasse is entitled to qualified immunity, (2) Ragelis fails to allege facts to support a claim against Holladay, and (3) Ragelis's claims against the County must fail for lack of an underlying constitutional violation and/or evidence of an official policy, practice, or custom. The Court will address each argument separately.

---

[2] With his amended complaint, Ragelis claims that his arrest also violated the substantive portion of the Fourteenth Amendment Due Process Clause. Ragelis does not pursue this claim in opposition to summary judgment, but to the extent that he has not abandoned it, the Court finds that the Due Process Clause have no application in this case. "Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). When an officer allegedly makes a warrantless arrest without probable cause or uses excessive force in making an arrest, the text of the Fourth Amendment, which addresses unreasonable searches and seizures, provides the pertinent source of constitutional protection. *Id*. If a plaintiff cannot prevail under the Fourth Amendment's standards, "it is a certainty he cannot win it under the seemingly more burdensome, and clearly no less burdensome, [shock-the-conscience] standard that must be met to establish a Fourteenth Amendment substantive due process claim." *Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000).

## A. Individual Capacity Claim Against Hasse: Wrongful Arrest

In analyzing Hasse's claim to qualified immunity, the Court considers whether the allegations, viewed in a light most favorable Ragelis, demonstrate that Hasse's conduct violated a constitutional right; and if so, whether the constitutional right was "clearly established" at the time in question, such that a reasonable person in Hasse's position would have known his or her actions were unconstitutional. *Hess v. Ables*, 714 F.3d 1048, 1051–52 (8th Cir. 2013). "'Qualified immunity is appropriate only if no reasonable factfinder could answer yes to both of these questions.'" *Id.*(quoting *Nelson v. Corr. Med. Servs.,* 583 F.3d 522, 528 (8th Cir.2009). For reasons that follow, the Court finds that Hasse did not violate Ragelis's constitutional rights, and he is therefore entitled to qualified immunity.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016)(quoting *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011)(quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)). An officer has probable cause when the totality of the circumstances at the time of the arrest are enough to lead a reasonable person to believe that the

defendant has committed or is committing an offense. *Id*. "If an officer arrests a suspect under the mistaken belief that there is probable cause, arguable probable cause exists 'if the mistake is objectively reasonable.'" *Id*. (quoting *Borgman,* 646 F.3d at 523)(quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)).

At the time of Ragelis's arrest, Arkansas law provided that a person commits domestic battery in the third degree if:

> (1) With the purpose of causing physical injury to a family or household member, the person causes physical injury to a family or household member;
>
> (2) The person recklessly causes physical injury to a family or household member;
>
> (3) The person negligently causes physical injury to a family or household member by means of a deadly weapon; or
>
> (4) The person purposely causes stupor, unconsciousness, or physical or mental impairment or injury to a family or household member by administering to the family or household member, without the family or household member's consent, any drug or other substance.

Ark. Code Ann. 5-26-305(a)(1)-(3). A "family or household member" under the statute includes "[p]ersons who presently or in the past have resided or cohabitated together," Ark. Code Ann. § 5-26-302(F), and "family or household member" status does not require cohabitation at the time of the battery, nor does it require cohabitation for a certain length of time. *See Wheeler v. State*, 2017 Ark. App.

7

540, 8, 532 S.W.3d 602, 608 (2017)(citing *Williams v. State*, 2017 Ark. App. 287, at 2, 524 S.W.3d 5, 7 (2017)).

It is undisputed that when Ragelis called 911, Thomas had been staying at Ragelis's residence for a few days. In deposition, Ragelis recalled that he told Hasse that in the past, Thomas had come to stay for two days, "and two days turned into two weeks . . . until [Ragelis] mentioned the four-letter word—r-e-n-t . . . . "[3] It is also undisputed that Thomas, Davis, and Ragelis each told the responding officers that Ragelis had grabbed Thomas by the collar and pinned him to the ground two times. Additionally, the officers observed that Thomas had two red scratch marks on his throat and that Ragelis had a scraped elbow.

The Court finds that the undisputed facts show that the totality of the circumstances known to Hasse at the time of the arrest gave him an objectively reasonable basis to believe that Ragelis had either purposely or recklessly caused physical injury to Thomas, who qualified as a "family or household member."

Ragelis makes four arguments in opposition to summary judgment. First, he insists that this is a classic case of "he said, she said." It is true that Ragelis and Thomas gave Hasse different accounts of what happened. Thomas told the officers

---

[3]ECF No. 22, at 104 (Ragelis Dep. at 69).

that after Ragelis pinned him to the ground inside the house, he managed to break free and run outside, but Ragelis chased him to the garage, where he forced him to the ground a second time. Davis confirmed Thomas's account of events. Ragelis, on the other hand, recalled that Thomas refused to leave the property and continued to shout obscenities from the garage, which caused Ragelis to take Thomas to the ground a second time. These conflicting statements could not be resolved at the scene, and they did not negate probable cause to arrest Ragelis. *Borgman,* 646 F.3d at 523 (8th Cir. 2011)(citing *Amrine,* 522 F.3d 823, 832–33 (8th Cir. 2008))("When an officer is faced with conflicting information that cannot be immediately resolved, . . . he may have arguable probable cause to arrest a suspect.").

Second, Ragelis claims that Hasse demonstrated unprofessional conduct at the scene and that he was determined, no matter what, to arrest someone. According to Ragelis, when Hasse arrived, he was very aggressive and said he would make an arrest based on who had the most scars. Ragelis states that he told Hasse that he was merely defending himself, but Hasse refused to give any consideration to Ragelis's claim. He further recalls that Hasse referred to Thomas as Ragelis's son and threatened to charge Ragelis with a felony after he discovered that Ragelis was a retired military officer with security clearance. Even if Hasse

9

made these statements and behaved unprofessionally, the issue of probable cause is an objective question of law, judged from the perspective of a reasonable officer at the scene, and the undisputed facts show that a reasonable officer would have probable cause to believe that Ragelis had committed domestic battery.

Third, Ragelis argues that no reasonable officer would have arrested him as an improper aggressor because the facts showed that he was justified in using force to evict Thomas from his property. Ragelis also contends that the circumstances at the scene presented "a classic, simple case of self-defense." In making a probable cause determination, an officer cannot ignore or avoid plainly exculpatory evidence, but he need not conduct a "mini-trial" before making an arrest. *See Kuehl v. Burtis et al.,* 173 F.3d 646, 650 (8th Cir.1999). Here, the responding officers interviewed all witnesses at the scene, and Thomas's and Davis's report of events was that Ragelis pursued, physically overpowered, and injured Thomas even as he was attempting to exit the residence. Furthermore, nothing in the record indicates that Hasse turned a blind eye to plainly exculpatory evidence.

Fourth, Ragelis attempts to graft state-law arrest limitations onto the Fourth Amendment probable cause requirement. He argues that state law required Hasse to consider evidence that "a party to the act of domestic abuse acted in self-defense[.]" *See* Ark. Code Ann. § 16-81-113(c). Additionally, Ragelis argues that

Arkansas law required an imminent threat of further injury to support his arrest.[4]

These arguments are without merit. "[A] police officer who makes an arrest based on probable cause but who is prohibited by state law from doing does not violate the Fourth Amendment." *Rose v. City of Mulberry, Arkansas*, 533 F.3d 678, 680 (8th Cir. 2008)(citing *Virginia v. Moore,* 553 U.S. 164, 128 S. Ct. 1598, 1607, 170 L.Ed.2d 559 (2008)).

### B. Individual-Capacity Claim Against Hasse: Excessive Force

In support of is excessive force claim, Ragelis alleges that Hasse directed Parker to handcuff him behind his back, despite Ragelis's request to be handcuffed in front. By affidavit, Ragelis testifies:

> The handcuffs were put on very tight[,] and they hurt. As I was driven to the detention center, some 40 minutes away, the handcuffs got tighter and tighter and more painful.[5]

Ragelis's excessive force claim is properly analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Conner*, 490 U.S. 386, 395, 109 S. Ct. 1865 (1989). The test is whether the amount of force used was objectively reasonable under the circumstances that confronted Hasse. *See Littrell*

---

[4]Arkansas retains the common law rule permitting warrantless arrests for misdemeanors only if the crime occurs in the presence of the officer, but in the case of domestic abuse, a warrantless arrest is permissible if, among other things, there is reason to believe that an imminent threat of further injury exists. *See* Ark. Code Ann. § 16-81-106(b)(2)(B).
[5]ECF No. 22, at 10.

11

*v. Franklin*, 388 F.3d 578, 583 (8th Cir.2004)(quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir.1994)). A court may consider the results of the use of force in determining whether a defendant used excessive force, but the degree of injury is not dispositive. Instead, the inquiry must focus on whether the force applied was reasonable from the perspective of a reasonable officer on the scene at the time the force was used. *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011)(citing *Graham,* 490 U.S. at 396, 109 S. Ct. 1865).

Ragelis argues that restraint by handcuffs amounted to excessive force because he was calm and cooperative, and Hasse knew that he was a retired military officer with top security clearance. However, Hasse had probable cause to believe that Ragelis had recently committed domestic abuse in the context of heated altercation, and despite Ragelis's apparent calmness, it was reasonable to suspect that he could pose a safety threat. Furthermore, Ragelis does not claim that he requested to be handcuffed from the front due to preexisting physical condition, nor does he claim that complained that the handcuffs were too tight and caused him pain. The undisputed facts show that the use of handcuffs was objectively reasonable under the circumstances and did not amount to excessive force.

## C. Individual-Capacity Claim Against Holladay: Failure to Train

Holladay served as the Sheriff of Pulaski County at the time of Ragelis's arrest, and Ragelis seeks to hold him liable under a failure-to-train or failure-to-supervise theory. As a threshold matter, a supervisor can be liable under § 1983 for failure to train or supervise only if that failure caused a constitutional deprivation, *see Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007), and the undisputed facts in this case fail to show a constitutional violation. Furthermore, supervisory liability arises only where the supervisor had notice that training procedures or supervision were inadequate and likely to result in a constitutional violation. *See Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001)(quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)). Ragelis neither alleges facts nor comes forward with evidence showing that Holladay was on notice that poor training or a lack of supervision was likely to result in wrongful arrests or the use of excessive force. The Court finds no genuine issues for trial with respect to Ragelis's individual-capacity claim against Holladay.

## D. Claims Against the County (Official-Capacity Claims)

It is fundamental that when the underlying conduct does not deprive a plaintiff of a federally protected right, an attendant §1983 claim against a municipal employer must fail. *See Olinger v. Larson*, 134 F.3d 1362, 1367 (8th

Cir. 1998) ("In light of our ruling that Detective Larson and Chief Satterlee did not violate Olinger's fourth amendment rights, Olinger's claims against the City . . . must also fail."). Because Ragelis presents no facts showing that his constitutional or federally protected rights were violated, his claim against the County must fail.

### E. Supplemental, State Law Claim

Ragelis alleges that Hasse negligently and recklessly caused him personal injuries, and he seeks damages under Arkansas's crime victim civil liability statute, Ark. Code § 16-118-107, which provides a cause of action to "[a]ny person injured or damaged by reason of conduct of another person that would constitute a felony under Arkansas law." Because the Court finds no issues for trial with respect to claims over which it has original jurisdiction, those claims will be dismissed with prejudice, and the Court will dismiss Ragelis's supplemental state law claim without prejudice. *See* 28 U.S.C. § 1367(c)(3)("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

### IV. Conclusion

For the reasons stated, Defendants' motion for summary judgment [ECF No. 17] is GRANTED. Plaintiff's claims arising under federal law are DISMISSED WITH PREJUDICE, and Plaintiff's supplemental state law claim is DISMISSED

WITHOUT PREJUDICE.  Pursuant to the judgment entered together with this order, this action is DISMISSED IN ITS ENTIRETY.

    IT IS SO ORDERED THIS 3rd DAY OF MARCH, 2020.

                                          <u>/s/Susan Webber Wright</u>
                                            UNITED STATES DISTRICT JUDGE